IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID DANON, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 15-6864 |
| | : | |
| THE VANGUARD GROUP, INC., | : | |
|     Defendant. | : | |

Jones II,    J.                                                                                            May 23, 2016

**<u>MEMORANDUM</u>**

Upon consideration of The Vanguard Group, Inc.'s ("Defendant") Motion to Dismiss David Danon's ("Plaintiff") Complaint, (Dkt No. 6), and Memorandum of Law in Support thereof, (Dkt No. 6-2 [hereinafter MTD]), Plaintiff's Response in opposition thereto, (Dkt No. 10 [hereinafter Resp.]), Defendant's Reply in support thereof, (Dkt No. 16 [hereinafter Rep.]), Plaintiff's Sur-Reply in opposition thereto, (hereinafter Sur-Reply), and the *amicus curiae* brief filed by the Securities and Exchange Commission, (Dkt No. 13 [SEC Br.]), it is hereby ORDERED that the Motion is GRANTED.

**I.     Standard of Review**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted). The "court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).[1]

## II. Background

Defendant is an investment services firm that operates and manages publicly traded mutual funds, exchanges traded funds, and performs other financial services for its clients. (Dkt No. 1 [hereinafter Compl.] ¶ 3.) Prior to January 3, 2013, Plaintiff was an experienced tax attorney working for Defendant. (Compl. ¶ 6.) Beginning in 2010 and continuing through his employment with Defendant, Plaintiff advised various senior corporate employees and members of Defendant's tax department that, in his opinion, Defendant was engaged in illegal tax and corporate practices. (Compl. ¶ 7.) Defendant's employees told Plaintiff to cease and desist attempting to notify persons at Defendant's company and to never put his opinions in writing. (Compl. ¶ 8.) Between roughly 2011 and 2012, an employee at Defendant's company directed Plaintiff to perform duties that he believed were in violation of the law. (Compl. ¶ 9.) In those instances, Plaintiff refused to perform the duties requested. (Compl. ¶ 9.) On roughly January 3-4, 2013, Defendant terminated Plaintiff and told Plaintiff that he should find other employment.

---

[1] Plaintiff argues that Defendant's attachment of documents from the parties' New York state case turns this motion into a motion for summary judgment. (Resp. at 4.) The Court disagrees. The Court may consider the "undisputedly authentic documents" from the public records of Plaintiff's New York case in its consideration of Defendant's Motion to Dismiss on collateral estoppel grounds. *See, e.g.*, *Mayer*, 605 F.3d at 230.

(Compl. ¶ 10.) At the time of his termination, Plaintiff was 52 years old and was making roughly $250,000 a year. (Compl. ¶¶ 14-15.) After his termination, Plaintiff has not been able to find a job and has been suffering medical ailments. (Compl. ¶¶ 16-17.)

Plaintiff filed an action with the Supreme Court of New York in New York County. (Compl., *State of New York ex rel. David Danon v. Vanguard Grp., Inc.*, 100711/13 [hereinafter N.Y. Compl.] (May 8, 2013)).[2] In the New York case, Plaintiff alleged that Defendant retaliated against Plaintiff by demoting, and then firing, him for his "efforts to stop, correct, or otherwise remedy" Defendant's illegal activities in violation of the New York False Claims Act ("NYFCA"). (N.Y. Compl. ¶¶ 200-03.) Defendant moved to dismiss Plaintiff's New York Complaint. Judge Joan A. Madden granted Defendant's motion. *State of New York ex rel David Danon v. Vanguard Grp., Inc.*, 100711/13 (N.Y. S.Ct. Nov. 13, 2015). Judge Madden held that the New York Complaint failed to allege a claim for retaliation in violation of the NYFCA:

> Neither the complaint, nor the additional submissions, contain any allegations [Defendant] knew in January 2013, that [Plaintiff] was involved in protected conduct...Notably, [Plaintiff] does not indicate the dates when he expressed his concerns to [Defendant]'s employees and, in particular, whether he did so before he was informed of his termination in January 2013.
>
> Moreover, [Defendant] points out, and [Plaintiff] does not deny, that it continued to employ [Plaintiff] as its attorney until June 2013, and that during those months, [Plaintiff] continued to have unfettered access to [Defendant]'s confidential information. In fact, [Plaintiff] states that after he was notified of his termination, he collected documents to support his concerns about [Defendant]'s tax practices. These circumstances tend to rebut any suggestion that [Defendant] knew at the time [Plaintiff] was terminated that he intended to use such information to bring a qui tam action or to engage in other protected conduct under the False Claims Act...

*Id.* at 21-22.

The Court went on to explain, in *dicta*: "assuming *arguendo* that [Defendant] knew of internal complaints made by [Plaintiff] prior to notifying him of his termination, under the

---

[2] The Court may consider these documents as they are matters of public record. *Mayer*, 605 F.3d at 230.

3

circumstances here, complaints regarding [Defendant]'s 'at cost' pricing structure do not constitute 'protected activity' for the purposes of the False Claims Act since, as a tax lawyer for [Defendant], [Plaintiff]'s job duties included 'ensuring that [Defendant] complied with federal and state tax law.'" *Id.* at 22 (internal citations omitted).

Plaintiff brought the present suit under Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX"), the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h)(1) ("Dodd-Frank"), and the Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq.* (Compl. ¶ 13.) Defendant moved to dismiss the Complaint on three theories: (1) the Complaint lacked sufficient factual allegations to support Plaintiff's claim for retaliation; (2) Plaintiff is collaterally estopped from proceeding with this action due to the New York case and (3) Plaintiff fails to meet the statutory prerequisites for bringing this claim. (MTD at 1.) The Court finds the collateral estoppel, or issue preclusion, argument dispositive.

### III.   Discussion

#### A. **Plaintiff is collaterally estopped from relitigating whether there was a causal connection between his termination and his activities, even if such activities are protected.**

Defendant argues that Plaintiff is collaterally estopped from relitigating whether Defendant's decision to terminate Plaintiff was an act of retaliation for Plaintiff's outspokenness about Defendant's purportedly illegal activities. "Collateral estoppel, or issue preclusion, applies when an issue raised in a subsequent suit was 'actually and necessarily determined' in a prior litigation; this precludes a party from litigating the same issue based on a different cause of action." *Roganti v. Metropolitan Life Ins. Co.*, 2012 WL 2324476, at *4 (S.D.N.Y. 2012) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Defendant explains that the

Supreme Court of New York dismissed Plaintiff's NYFCA claim for retaliation on a finding that Plaintiff had failed to allege facts showing that Defendant was aware of Plaintiff's activities prior to firing Plaintiff. Defendant argues that SOX, Dodd-Frank, and the Pennsylvania Whistleblower Law all require a finding that there was a nexus between Plaintiff's activities and Defendant's decision to terminate Plaintiff. Any finding of a nexus necessarily requires a determination that Defendant was aware of Plaintiff's activities. Thus, argues Defendant, Plaintiff should be collaterally estopped from relitigating whether Defendant's decision to terminate him was an act of retaliation because the New York case was a final judgment on the issue of whether Defendant was aware of Plaintiff's activities. Plaintiff, in turn, argues that the differences between the NYFCA and statutes in this case are too great to allow issue preclusion to apply.

The Court agrees that the issue of whether or not Defendant was aware of Plaintiff's activities is dispositive of Plaintiff's claims in this case. Thus, the application of issue preclusion to the question of whether Defendant was aware of Plaintiff's activities prior to terminating Plaintiff would render Plaintiff's claims meritless.

The Court applies the issue preclusion regime of New York state. "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren Cit Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). As the state case was decided in New York, this Court must consider New York's collateral estoppel, or issue preclusion, regime.

"The New York law of collateral estoppel employs a two-part test: a party is estopped from relitigating an issue when [1] that issue was necessary to the resolution of the prior action, and [2] the party against whom estoppel is invoked had a full and fair opportunity to contest that

5

issue in the previous litigation. *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 491 (2d Cir. 2004) (citing *Schwartz v. Pub. Adm'r*, 246 N.E.2d 725, 729 (1969)).

For collateral estoppel to apply, the relevant state decision must reflect a final judgment. *Horsehead Industries, Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 141-42 (3d Cir. 2001) (applying New York law). The Supreme Court of New York's decision is a final judgment. Plaintiff has filed a notice of appeal of the New York case that remains pending. (MTD at 15 n. 9.) However, this appeal is not a bar to the Court's collateral estoppel analysis. "The rule in New York, unlike that in other jurisdictions, is that the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding." *Horsehead Industries, Inc.*, 258 F.3d at 141-42 (quoting *Matter of Amica Mut. Ins. Co.*, 85 A.D.2d 727, 445 N.Y.S.D.2d 820, 822 (N.Y.S.2d 1981)).

Thus, the Court proceeds to the two step collateral estoppel analysis. First, the Supreme Court of New York's determination of the issue of Defendant's knowledge of Plaintiff's activities was critical in the resolution of Plaintiff's NYFCA retaliation claim. The Supreme Court of New York dismissed Plaintiff's retaliation claims based on the insufficiency of the factual allegations alleged in the New York Complaint. *State of New York ex rel David Danon*, 100711/13 at 21-22. Specifically, the Supreme Court of New York held that Plaintiff had failed to allege that Defendant was aware of Plaintiff's activities prior to firing Plaintiff, and thus, that no nexus existed between Plaintiff's activities and Defendant's decision to terminate Plaintiff. *Id.* at 21. The New York Supreme Court did state that "assuming *arguendo*" Defendant was aware of Plaintiff's activities, Plaintiff's activities did not constitute "protected" activities under the statute. *Id.* at 22 (internal citations omitted). The Court finds that the issue of Defendant's knowledge of Plaintiff's activities was necessary to the resolution of the New York case.

Second, Plaintiff had a "full and fair opportunity" to litigate the issue of Defendant's knowledge of Plaintiff's activities and the nexus between Plaintiff's activities and Defendant's decision to fire Plaintiff in the New York case. This holding turns on the determination that the facts and incidents complained about in the New York Supreme Court case are identical to those pleaded in this case. In this case, Plaintiff claims that beginning in 2010 and continuing through his employment, Plaintiff reported to "various senior corporate employees and members of the defendant's tax department" that Defendant was engaged in "illegal tax and corporate practices in violation of the laws of the United States." (Compl. ¶ 7.) Plaintiff claims that he was told to stop notifying Defendant's employees about these purported violations, to not put his concerns in writing, and, instead, to participate in this purported illegal activity. (Compl. ¶¶ 8-9.) Plaintiff states that he was fired because of his complaints to senior management about the purportedly illegal activity. (Compl. ¶¶ 10-11.)

Plaintiff brought the exact same retaliation claim in his New York case. NY Compl. ¶¶ 200-03. In Plaintiff's New York Complaint, Plaintiff alleged that Defendant demoted, discharged, and harmed Plaintiff and his career in response to Plaintiff's "efforts to stop, correct, or otherwise remedy the violations." (N.Y. Compl. ¶¶ 200-03.) Defendant filed a Motion to Dismiss the New York Complaint. In response, Plaintiff argued that "[w]hether a plaintiff engaged in protected conduct and defendants knew of such conduct [we]re fact specific inquiries." (N.Y. Resp. at 29.) Plaintiff cited to an Affidavit in which he alleged the following facts:

> 5. In the course of my work, I became aware of facts revealing that [Defendant] was avoiding paying millions in state and federal taxes...
>
> 6. I made repeated efforts to put a stop to [Defendant]'s unlawful practices, including telling the head of the legal tax group and other senior members of [Defendant]'s tax department that I believed Vanguard's at-cost pricing illegally avoided taxes...

7

> 7. The head of [Defendant]'s legal tax group specifically told me that my attempts to stop the illegal practices had harmed my relationship with important members of [Defendant]'s tax department...
>
> 8. My discomfort with [Defendant]'s illegal practices and my attempt to stop them was known by many in the legal tax group and tax departments. In mid-2012, a [Defendant] tax lawyer approached me with deep concerns....
>
> 9. Despite my efforts, [Defendant] continued its unlawful tax and securities fraud...
>
> 10. In January 2013, [Defendant] informed me that my employment would be terminated....
>
> 11. Upon learning that I would be terminated, I proceeded as reasonably necessary in best interests of [Defendant] to stop its illegal practices.

(Affidavit to NY Court ¶¶ 5-11.) These are the same facts alleged in this case. (*See* Compl. ¶¶ 7-11.)

While the causes of action differ between the New York case and this case, all relevant statutes require Defendant's knowledge and a causal connection between Defendant's knowledge and Plaintiff's termination. In the New York action, Plaintiff sued under the NYFCA. *See* N.Y. State Fin. Law § 191. To state a claim for retaliation under the NYFCA, Plaintiff had to show that "(1) the employee engaged in protected conduct under the [statute]; (2) the employer knew that the employee was engaged in such conduct; and (3) the employer discharged, discriminated against or otherwise retaliated against the employee because of the protected conduct." *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 685 (S.D.N.Y. 2007). As previously addressed, the New York Supreme Court found that Plaintiff had failed to plead the second and third prongs of this test. *State of New York ex rel David Danon*, 100711/13 at 21-23.

In this action, Plaintiff is suing under SOX, Dodd-Frank, and the Pennsylvania Whistleblower Law. Plaintiff argues that because "[t]he present case involves different claims and different standards of attorney conduct...is not a qui tam action but a claim by an employee-

8

whistleblower under the federal and state statutes for wrongful termination," his federal case is not collaterally estopped. (Resp. at 22.) This argument is meritless. While the various laws do have different definitions of "protected" activities, requirements for exhaustion, statutes of limitations, and damages provisions, the relevant laws all require Plaintiff to show that there exists a causal connection between Plaintiff's activities and Defendant's decision to terminate Plaintiff. The statutes all require that Defendant be aware of the purportedly protected activity prior to the adverse employment action.[3] This causal connection is exactly what the New York Supreme Court found Plaintiff had not sufficiently pled. Thus, due to the New York Supreme Court's ruling, Plaintiff is collaterally estopped from relitigating whether there was a causal connection between his activities and Defendant's decision to terminate him. Because this issue was necessarily decided under the NYFCA, the Court can apply it to the issue in Plaintiff's claims under SOX, Dodd-Frank, and Pennsylvania Whistleblower Law statutes. *See, e.g.*, *Barnes v. New York State Division of Human Rights*, 2016 WL 110522, at *4-5 (finding that issues in

---

[3]     As to SOX, "the elements of a § 806 retaliation claim are that (1) the employee engaged in protected activity, (2) the employer knew or suspected that the employee engaged in the protected activity, (3) the employee suffered an adverse action, and (4) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action." *Wiest v. Lynch*, 710 F.32 121, 139 (3d Cir. 2013) (citing 29 C.F.R. § 1980.104(E)(2)); *see also Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 447 (2d Cir. 2013). Thus, due to the New York Supreme Court's ruling, Plaintiff is collaterally estopped from relitigating the second and fourth prongs of the SOX test.

As to Dodd-Frank, "the elements of a retaliation claim under the Dodd-Frank Act are (1) that the plaintiff engaged in a protected activity, (2) that the plaintiff suffered an adverse employment action, and (3) that the adverse action was causally connected to the protected activity." *Ott v. Fred Alger Management, Inc.*, 2012 WL 4767200, at *4 (S.D.N.Y. 2012) (internal citations omitted). Thus, due to the New York Supreme Court's ruling, Plaintiff is collaterally estopped from relitigating the third prong of the Dodd-Frank test.

As to the Pennsylvania Whistleblower Law, the employee alleging a violation of the act "must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee" reported the instance of wrongdoing verbally or in writing," and the employee "must come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts." *O'Rourke v. Commw., Dep't of Corr.*, 566 Pa. 161, 778 A.2d 1194, 1200 (2001). Thus, due to the New York Supreme Court's ruling, Plaintiff is collaterally estopped from relitigating the second step of the Pennsylvania Whistleblower Law.

Plaintiff's Title VII claims were collaterally estopped because the same issues were raised and decided in a state case under state law); *Rullan v. New York City Dep't of Sanitation*, 2011 WL 183335, at *5 (S.D.N.Y. 2011) ("[I]f the allegedly discriminatory acts are prohibited by both federal and state law, then the issue is precluded even if it was first decided on state law alone."); *Jeffrey M. Brown Associates, Inc. v. CRK Contracting of Suffolk, Inc.*, 100 F.Supp.2d 325 (E.D. Pa. 2000) (applying New York law and finding that "collateral estoppel may apply regardless of the types of relief sought and available in the first action"). All three causes of action alleged in this Complaint require a finding of a causal connection; thus, the application of issue preclusion renders all the claims in this Complaint meritless.

 Plaintiff makes numerous arguments against this holding. First, Plaintiff argues that the New York case was not a full and fair opportunity to litigate his retaliation claims because the Supreme Court of New York erroneously applied New York standards of professional conduct, rather than Pennsylvania standards of professional conduct. (Resp. at 4-10.) Further, Plaintiff argues that the Supreme Court of New York erroneously held that Plaintiff had not engaged in protected activity. (Resp. at 12-20.) These arguments are meritless because the Supreme Court of New York did not base its decision to dismiss Plaintiff's retaliation claims on any analysis of New York standards of professional conduct or on a finding that Plaintiff did not engage in protected activity. Thus, the Court need not address whether or not the pleaded factual allegations constitute "protected" activities. Plaintiff is alleging the same activities as he did in the New York case. It does not affect this Court's analysis if these activities are in fact "protected," and/or if the Supreme Court of New York erred in holding that these activities were not "protected."[4] The issue that is collaterally estopped is distinct from the issue of whether or

---

[4] In his Sur-Reply brief, Plaintiff repeatedly asserts that the Court should consider the holding in *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 155 (2d Cir. 2015). (Sur-Reply at 1-2, 5-6.) Plaintiff contends that

not the activities are "protected." Thus, the Court need not reach the question of what constitutes "protected" activities under SOX, Dodd-Frank, and the Pennsylvania Whistleblower Law.[5]

Second, Plaintiff argues that he did not receive a full and fair opportunity to be heard on the merits because the case was dismissed before discovery, (Resp. at 22), and he did not receive a full hearing or trial. (Sur-Reply at 1, 6-7.) Plaintiff provides no citation to support his argument that a claim dismissed on the merits at the motion to dismiss stage cannot be given preclusive effect. The New York collateral estoppel test is not whether Plaintiff received the opportunity to conduct discovery or interview witnesses; rather, the test is whether Plaintiff had a "full and fair opportunity" to litigate the issue. As previously addressed, Plaintiff had the opportunity to argue against Defendant's Motion to Dismiss the New York Complaint. He filed a Response in opposition fully outlining his legal position, and he filed an Affidavit attempting to provide additional factual support on this issue. The New York Supreme Court considered both and still found against Plaintiff.

---

this opinion stands for the proposition that "a whistleblower who first reports internally is engaged in protected conduct which is directly contrary" to the underlying state court decision in this case. (Sur-Reply at 1.) Plaintiff's position misstates the holding in *Berman*. The holding in *Berman* was that a whistleblower could "pursue Dodd-Frank remedies for alleged retaliation after his report of wrongdoing to his employer, despite not having reported to the Commission before his termination." *Berman*, 801 F.3d at 155. This holding concerns the definition of "protected" under Dodd-Frank. Dodd-Frank was not at issue in the underlying state court case. Moreover, the definition of "protected" is unrelated to the application of issue preclusion. Thus, *Berman* was not "directly contrary" to the underlying state court opinion in this case.

[5] The SEC submitted a brief advocating that the anti-retaliation provisions in Dodd-Frank allow anti-retaliation whistleblower protections under Dodd-Frank to apply to a putative whistleblower who reports securities fraud violations internally but does not file a formal complaint with the SEC. (SEC Br.) The SEC further argued that its position was subject to deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). (SEC Br.) Because the Court finds that issue preclusion forestalls any analysis of whether Plaintiff's activities were "protected" under Dodd-Frank, it is not appropriate for the Court to address the SEC's arguments at this juncture. The Court makes no ruling as to whether Plaintiff's activities are "protected" such that Plaintiff could receive whistleblower protections under Dodd-Frank.

Third, Plaintiff argues that it is "unfair" to preclude him from bringing his federal and Pennsylvania claims in this Court. (Resp. at 21-24.) Plaintiff was the one who chose to litigate his claim in New York state court before filing any actions here. It is not unfair to apply issue preclusion against him when it was his decision to avail himself of the New York state court forum first.

Fourth, Plaintiff argues that the Restatement (Second) of Judgments encourages that courts deny the Motion. (Sur-Reply at 4.) In his Sur-Reply, Plaintiff first cites to a section of the Restatement that refers to *res judicata*, not issue preclusion. *See* Restatement (Second) of Judgments § 86(1) (1982). This is not applicable here. Plaintiff later cites to Restatement's section on issue preclusion:

> A determination of an issue by a state court does not preclude relitigation of that issue in federal court if according preclusive effect to the determination would be incompatible with a scheme of federal remedies which contemplates that the federal court may make an independent determination of the issue in question.

*Id.* at § 86(2). This section also does not apply in this case. The federal schemes at issue did not repeal any state scheme. Further, the collaterally estopped issue here is Defendant's knowledge of Plaintiff's activities, and the causal connection between Defendant's termination of Plaintiff and Plaintiff's purportedly protected activities. There is no difference between the processes of determining that prong between the state and federal schemes. The Supreme Court of New York's opinion did not hinge on NYFCA's definition of "protected." Thus, any differences in the definitions between the definition of "protected" under NYFCA and SOX, Dodd-Frank, and the Pennsylvania Whistleblower Law are irrelevant. The collaterally estopped issue here is unrelated to the definition of "protected."

In conclusion, Plaintiff is collaterally estopped from relitigating whether there was a causal connection between his firing and his activities, even if such activities are protected. As a

causal connection is a component of the *prima facie* case for retaliation claims under SOX, Dodd-Frank, and the Pennsylvania Whistleblower Law, Plaintiff's Complaint must be dismissed.

### B. The Pennsylvania Whistleblower Law Claim is time-barred.

Under the Pennsylvania Whistleblower Law, Plaintiff had to bring the action within 180 days after the occurrence of the alleged violation. 43 P.S. § 1424(a). The "Whistleblower Law's 180-day limit is mandatory, and courts have no discretion to extend it." *Campion v. Northeast Utilities*, 598 F.Supp.2d 638, 645 (M.D. Pa. 2009) (quoting *O'Rourke v. Pennsylvania Dep't of Corr.*, 730 A.2d 1039, 1042 (Pa. Commw. Ct. 1999)). This requirement has been strictly construed. Of note, the filing of a Complaint with the Pennsylvania Human Relations Commission is not sufficient to toll the 180-day statute of limitations. *See, e.g.*, *Graddy v. Children's Home of Easton*, 2016 WL 98126, at *4 n. 9 (E.D. Pa. 2016) (collecting cases). Plaintiff has provided no case law, and the Court can find none, to support a finding that the statute of limitations would be tolled by filing a lawsuit under a different state's false claims act. As such, even if a dispositive issue was not collaterally estopped rendering the claim moot, this claim would still be time-barred.

### C. Plaintiff failed to administratively exhaust his SOX claim.

Before filing a SOX claim, Plaintiff must file an administrative complaint with the Occupational Safety and Health Administration within 180 days of the "date on which the employee became aware of the alleged violation of the Act." 18 U.S.C. § 1514A(b)(2)(B). Failure to exhaust this administrative remedy removes this Court of its subject matter jurisdiction. *See, e.g.*, *Willis v. Vie Fin. Grp., Inc.*, 2004 WL 1774575, at *5 (E.D. Pa. 2004). Plaintiff has failed to plead that he exhausted his administrative remedies. Thus, even if a

13

dispositive issue was not collaterally estopped, this claim would be dismissed for failure to exhaust administrative remedies.

### IV. Conclusion

Plaintiff's Complaint is dismissed for failure to state a claim upon which relief can be granted. Because amendment would be futile, Plaintiff's Complaint is dismissed with prejudice.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.